SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------------X

SHIRLYN SUMMERS, as Mother and Natural Guardian
of Infant, D.B. and SHIRLYN SUMMERS, Individually,
                 Plaintiffs,

        -against-

LONG BEACH CITY SCHOOL DISTRICT a/k/a LONG
BEACH PUBLIC SCHOOLS, LISA WEITZMAN, JEAN
MARIE LILLEY, LAUREN SCHNEIDER, SABRINA
CANTORE, VINCENT RUSSO, DR. RANDI BERGER,
DR. MICHELE NATALI, DAVID WEISS, in their Individual
and Official Capacities and JOHN AND JANE DOE'S 1-20,
whose identities are unknown at present,

                 Defendants.
------------------------------------------------------------------------x

**VERIFIED
COMPLAINT**

**INDEX NO.:** _____

**JURY TRIAL
DEMANDED**

       Plaintiffs, Shirlyn Summers, as mother and natural guardian of infant, D.B. ("DB"), and

Shirlyn Summers ("Summers" and/or "Mother"), individually (collectively "Plaintiffs"), by and

through their attorneys, Leeds Brown Law, P.C, as and for their complaint against defendants, Long

Beach City School District a/k/a Long Beach Public Schools ("District"), Lisa Weitzman

("Weitzman"), Jean Marie Lilley ("Lilley"), Lauren Schneider ("Schneider"), Sabrina Cantore

("Cantore"), Vincent Russo ("Russo"), Dr. Randi Berger ("Berger"), Dr. Michele Natali ("Natali"),

and David Weiss ("Weiss"), in their individual and official capacities, and John and Jane Does 1-

20, who identities are presently unknown ("Individual Defendants") (collectively "Defendants"),

respectfully alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

       1. This action arises from the cruel and repeated physical, sexual, and mental abuse inflicted

upon DB (a non-communicative, severely mentally handicapped infant) while she was in the

custody and care of the District, tenured special education teacher Weitzman, and teacher's aides

Schneider and Lilley.

2. DB was diagnosed at birth with Down Syndrome.

3. The non-communicative and profound nature of DB's mental disability renders her helpless, unable to defend herself against her abusers, and incapable of reporting the battery of reprehensible and atrocious abuses she suffered for years, at the hands of the District, Weitzman, Schneider and Lilley.

4. Plaintiffs bring this action under the common law; 42 U.S.C. § 1983; 42 U.S.C. § 1988, the Americans with Disabilities Act of 1990 ("ADA''); 42 U.S.C. § 1985(3); 42 U.S.C. § 1986 and other state law causes of action, seeking compensatory damages, punitive damages and reasonable attorney fees for the inhumane deprivations of DB's rights afforded to her by the United States and New York State Constitutions, New York State law and federal law.

## PARTIES

5. Plaintiff Summers is a Black female and the mother and natural guardian of DB.

6. Plaintiff Summers is a citizen of the State of New York and maintains a residence in the City of Long Beach, Nassau County, New York.

7. Plaintiff DB is a sixteen-year old, severely mentally disabled, Black female and the daughter of Summers.

8. DB resides with Summers in the City of Long Beach, Nassau County, New York.

7. During the relevant times herein, DB attended the Long Beach Middle School ("LBMS") located at 239 Lido Boulevard, Lido Beach, New York 11561.

8. At all relevant times hereinafter mentioned, Defendant District was and is a municipal school district and a "public entity" as that term is defined by the ADA.

2

9. At all times relevant herein, Defendant District operated and continues to operate LBMS, and maintains its principal office at 235 Lido Boulevard, Lido Beach, New York.

10. At all relevant times herein, Defendant Weitzman was a tenured special education teacher, employee of the District, and a teacher of DB.

12. At all relevant times herein, Defendant Lilley was a full-time teaching assistant, employee of the District, and assisted Defendant Weitzman in her duties.

13. At all relevant times herein, Defendant Schneider was a full-time teaching assistant, employee of the District, and assisted Defendant Weitzman in her duties.

14. At all relevant times herein, Defendant Russo was the Coordinator of Special Education, an employee of the District, supervised the Special Education Department for the District and was a final policy maker for the District.

15. At all relevant times herein, Defendant Cantore was the Executive Director of Pupil Personnel Services, an employee of the District, supervised Pupil Personal Services and was final policy maker for the District.

16. At all relevant times hereinafter mentioned, Defendant Berger was the Director of Human Resources, an employee of the District, supervised the Human Resources Department, and was final policy maker for the District.

17. At all relevant times hereinafter mentioned, Defendant Natali was the Principal of LBMS, an employee of the District, supervised and oversaw LBMS and was a final policy maker for the District.

3

18. At all relevant times herein, Defendant Weiss was the Superintendent of Schools, an employee of the District, supervised, directed and oversaw the "investigation" of abuse perpetrated by Weitzman, Lilley and Schneider, and was a final policy maker for the District.

19. Upon information and belief, defendants "John" and "Jane Does" 1-20, are unknown at present, but believed to be employees of the District that witnessed, concealed, conspired, failed to prevent or otherwise participated in the acts of abuse perpetrated on DB.

20. Plaintiffs reserve the right to amend this pleading to include the identities of "John" and "Jane Does" 1-20, when and if such identities become known.

## FACTUAL ALLEGATIONS

### I. DB is a Qualified Individual with a Disability

21. Plaintiff, DB, is a non-communicative, mentally disabled, sixteen-year old, Black female.

22. DB was diagnosed at birth with Down Syndrome.

23. DB requires special education services and other services associated with her disability, which she began receiving from the District at the age of three (3) and continues to receive (through subsequent Individualized Education Planning ("IEP")) all services available.

24. DB's communication deficits arising from Down Syndrome substantially limit her major life activities, including her ability to interact in society, communicate with her family and perform basic tasks of daily living.

25. At the age of eleven, DB's expressive vocabulary was the equivalent of a three-year old.

26. An Augmentative and Alterative Communication Evaluation performed at Nassau BOCES on February 9, 2015 found that DB's "prognosis for the development of intelligible language to meet all of her medical, social, emotional, as well as academic needs is poor."

27. From at least September 2011 until on or about June 2014, DB was a special education student at LBMS, assigned to the classroom of Weitzman.

## II. Abuse Perpetrated by Weitzman, Lilley and Schneider

28. From at least September 2011 until on or about June 2014, DB was one of several special education students in Weitzman's classroom, all of whom were severely mentally handicapped, non-communicative, and/or diagnosed with cognitive developmental disabilities.

29. From at least September 2011 until on or about June 2014, Weitzman shared a classroom with two full-time teaching assistants, Defendants Lilley and Schneider.

30. Beginning in or around September 2011 and continuing at least until June of 2014, Weitzman, Lilley and Schneider repeatedly engaged in an abhorrent practice and custom of physical, psychological and sexual abuse of the disabled students in their care, including DB.

31. Upon information and belief, Weitzman, Lilley and Schneider met, agreed and conspired to abuse the students in their custody, including DB, and to conceal their abuse of DB and other students.

32. From at least September 2011 until on or about June 2014, and in furtherance of their agreement, Weitzman, Lilley and Schneider, routinely used the classroom and/or public bathroom to confine, detain, restrain and falsely imprison students who they perceived to be misbehaving, including DB, and used such unfounded perceptions to further the abuse.

33. From at least September 2011 until on or about June 2014 and in furtherance of their agreement, Weitzman, Lilley and Schneider repeatedly locked and imprisoned DB in the classroom and/or public bathroom for prolonged periods of time, sometimes as long as half an hour.

34. Presently, DB remains fearful of public bathrooms and refuses to use public bathroom in places like the local mall.

5

35. Upon information and belief and in furtherance of their agreement, from at least September 2011 to June 2014, Weitzman, Lilley and Schneider would scream abusive profanities at DB, tell her "she stinks" and that "she is disgusting."

36. Upon information and belief and in furtherance of their agreement, from at least September 2011 to June 2014, Weitzman, Lilley and Schneider would often spray DB's person (skin, hair, body and clothes) with aerosol disinfectants such as Lysol.

37. DB's mother (Summers), on occasion, would note that DB would return home smelling different, that her clothes and hair would be disheveled, but Summers could not understand why.

38. Upon information and belief, the verbal assaults perpetrated by Weitzman, Lilley and Schneider upon DB and other students were witnessed by, among others, minors D.D. ("DD") and C. D. ("CD"), interns in Weitzman's class.

39. Upon information and belief and in furtherance of their agreement, from at least September 2011 to June 2014, Weitzman, Lilley and Schneider would forcibly restrain mentally handicapped students, including DB, using zip ties to bind their hands and feet.

40. Upon information and belief, the use of zip ties on DB was witnessed by, among others, DD and CD.

41. Upon information and belief and in furtherance of their agreement, from at least September 2011 to June of 2014, Weitzman, Lilley and Schneider would forcibly, touch, strike and push mentally handicapped students, including DB.

42. Upon information and belief, the forcible touching, striking and pushing of DB by Weitzman, Lilley and Schneider was witnessed by DD and CD.

6

43. On at least six occasions, one of which is believed to have occurred during May 2014, DB's mother, Summers, observed two unidentified teacher's aides violently and forcible restraining, sitting on top of, and holding DB to the floor of Weitzman's class room.

44. Upon information and belief, on each occasion, Weitzman, Lilley and Schneider kept the classroom dark (without the lights), to conceal the injuries inflicted upon DB and others.

45. As a result of the conduct described in Paragraphs "41" to "44" of this complaint, DB sustained bruising to her body, and was left with marked handprint impressions on her skin, which the infant Plaintiff's Mother, Summers, personally observed.

46. When Summers brought the abuse and injuries to Weitzman's attention, Summers was told by Weitzman that the "procedure" was routine and for DB's "safety."

47. Upon information and belief and in furtherance of their agreement, from at least September 2011 to June 2014, Weitzman, Lilley and Schneider would touch students and/or let students touch them in a sexual manner, including DB.

48. Upon information and belief and in furtherance of their agreement, from at least September 2011 to June 2014, Weitzman, Lilley and Schneider would demonstrate sexually explicit acts (using students as a prop) in front of the other students, including DB. Summers observed DB imitating sexual gestures, but could not understand why or where DB would have learned this.

49. Upon information and belief, on a least one occasion, Weitzman, Lilley and Schneider directed a student to masturbate in front of the class and DB.

50. Upon information and belief, during the time-period of at least September 2011 through June 2014, Weitzman, Lilley and Schneider would abuse illegal substances, including marijuana, while in custody and control of mentally handicapped children, including DB.

7

51. The use of marijuana and/or other illicit substances by Weitzman, Lilley and Schneider endangered the life of DB and other students.

52. Upon information and belief and in furtherance of their agreement, from at least September 2011 through June 2014, Weitzman, Lilley and Schneider would also promote sexual exhibition of student genitalia while students were urinating in front of the classroom and in front of DB.

53. Upon information and belief and in furtherance of their agreement, from at least September 2011 through June 2014, Weitzman, Lilley and Schneider would dispense non-prescribed medication to students and improperly feed students, including DB, in order to force them to vomit so as to render them unable to attend class.

54. The basis of belief that DB was improperly fed and/or medicated is that Weitzman informed Summers "that she [DB] was vomiting her food" in class, but DB was not known to vomit with regularity until she was a student in Weitzman's class.

55. Upon information and belief and in furtherance of their agreement, from at least September 2011 through June of 2014, Weitzman, Lilley and Schneider would duct tape students' limbs and clothing in a restraining manner, including DB.

56. Upon information and belief and in furtherance of their agreement, from at least September 2011 through June 2014, Weitzman, Lilley and Schneider would permit students to play with their feces and urine in front of the class, and DB.

### III. Notice to the District and its Final Policy Makers

57. During the time-period of at least 2011 through June 2014, and upon information and belief as early as 2009, no less than eleven separate teacher's aides and/or teaching assistants temporarily assigned to Weitzman's classroom complained to Defendant Russo, their supervisor,

8

about Weitzman, Lilley and Schneider.

58. Among the teacher's aides that reported Weitzman, Lilley and Schneider to Defendant Russo were Kathleen Connolly, Amy Teamer Deale, Gloria Pelaez Shae, and teaching assistant Pria Das. Pria Das was told by Russo to "stick it out."

59. Despite receiving and confirming numerous reports and complaints of physical, mental and sexual abuse between 2011 and the fall 2014, Cantore, Russo, Berger and Natali (as supervised by and with the direct knowledge of Superintendent Weiss) were deliberately indifferent toward the abuse, and did not undertake any investigation or disciplinary action actions with respect to Weitzman, Lilley and Schneider.

60. Rather, Cantore, Russo, Berger and Natali (as supervised by and with the direct knowledge of Superintendent Weiss), threatened and ordered the complaining witnesses to keep silent or to risk dismissal, transfer, and other forms of retaliation.

61. In or around the Spring of 2014, after at least two years of continued abuse, Cantore, Russo, Berger and Natali, at the direction and under the supervision of Weiss, conducted internal investigations into the reports and complaints of abuse that were brought directly to their attention.

62. The investigations and investigative interviews conducted by Cantore, Russo, Berger and Natali, at the direction and under the supervision of Weiss in Spring 2014, were conducted with the assistance of the law firm, Ingerman Smith, LLP.

63. Upon information and belief, both the District and Ingerman Smith, LLP were given, and remain in possession of, various forms of evidence documenting the abuse at the hands of Weitzman, Lilley and Schneider, including witness statements and photographs depicting sexual and physical abuse being committed against students; upon information and belief some of which include DB.

9

64. Cantore, Russo, Berger and Natali interviewed witness, including Defendants, Weitzman, Lilley and Schneider. Weiss, as District Superintendent, was aware at all times, directly informed and monitored the progress of the investigations as they occurred.

65. Upon information and belief, the internal investigations conducted by Cantore, Russo, Berger and Natali (as overseen by Superintendent Weiss), and assisted by Ingerman Smith, LLP, confirmed the accuracy of the credible reports and complaints of abuse brought to their attention over the years, including the abuse of DB, and never did anything about it.

66. Upon information and belief, pursuant to the District's policy, custom and practice of concealment, deliberate indifference, and failure to train or supervise, as instituted by Cantore, Russo, Natali, Berger and Weiss, all of the complaining witnesses that came forward to expose the acts of abuse were, in fact, either transferred from Weitzman's classroom, transferred from LBMS, forced to silently resign, or were otherwise terminated.

67. Among those transferred and/or forced to resign, was Amy Teemer Deale who was removed from Weitzman's classroom, Gloria Pelaez Shae who was dismissed from her position, and Pria Dias who has since left the district.

68. Rather than take any corrective or punitive measures to ensure that DB and the other students in the classroom were protected from physical, mental and sexual abuse at the hands of their teachers between 2012 and 2014, Superintendent Weiss, (assisted by Cantore, Russo, Berger and Natali) instituted and maintained a policy of arranging and directly negotiating for the silent resignation of any complaining witnesses.

69. Upon information and belief, several meetings were held in or around the Fall 2014, wherein Cantore, Russo, Natali, Berger and Weiss discussed, agreed, and conspired to conceal the acts of abuse to ensure that the District did *not lose state and federal funding* for its Special

10

Education programs and further agreed to conceal their own repeated failures to report the abuse as required by New York State law (e.g. N.Y. Social Services Law § 413) and to put an end to the abusive acts of which they were aware of as early as 2009, and certainly by 2011.

70. At no point from 2011 to at least Spring 2014 was any investigation undertaken with respect to the reported abuses perpetrated by Weitzman, Lilley or Schneider. Upon information and belief, without any formal notification or announcement, Weitzman was secretly suspended by the District in November 2014.

71. Despite the secret suspension of Weitzman, at no point did the District disclose to or inform the parents of any students involved that their children were subjected to any form of abuse or even inquire if parents noticed anything with their children.

72. Upon information and belief, following the secret suspension in November 2014, parents of some children began to contact the District regarding Weitzman's absence.

73. Upon information and belief, Defendant Russo informed parents of student, TG, that Weitzman had been suspended for "personal reasons."

74. The District, Cantore, Russo, Natali, Berger and Weiss continued to conceal the reasons for Weitzman's suspension until late in 2015.

75. In or around October 2015, approximately a year after the suspension, an unidentified person circulated an anonymous letter to the parents of the children believed to have been involved in the acts of abuse at the hands of Defendants, and set forth, for the first time, the allegations and confirmed reports that the District had concealed the abuse for years.

76. On or around November 13, 2015, former president of the Long Beach City Teacher Associates, Steve Freeman ("Freeman"), wrote a letter to Roy Lester, the President of the Long Beach City Board of Education, detailing his knowledge of the abuses and Weitzman's

11

INDEX NO. 601660/2017

RECEIVED NYSCEF: 02/27/2017

involvement. ("Freeman Letter").

77. The Freeman Letter indicated that Weitzman "authorized [Freeman]" to offer the superintendent her resignation in return for receiving her salary through June 2015."

78. The Freeman Letter indicated that Weiss considered this to be "the worst case of child-abuse that [he] encountered in 27 years of being a teacher." Yet despite his prior knowledge of the abuse, Weiss was "personally concerned how it will look that the abuses in Ms. Weitzman's classroom occurred within 500 feet of his office," and went unresolved for years.

79. The Freeman Letter stated that "several members of the LBCTA [Long Beach City Teachers Association] confided in [Freeman] that they had personally witnessed instances of verbal and physical abuse in and around Ms. Weitzman's classroom."

80. The Freeman Letter stated that several members of the LBCTA confided in Freeman that they had personally witnessed "the smoking of marijuana on school grounds by [] Weitzman and [] Schneider and that they had reported such acts to then-principal Michele Natali and MS Coordinator of Special Education Vincent Russo; but no actions were taken . . ."

81. The Freeman Letter further stated that "In May 2015 LBSEA President Rea and [Freeman] met with the superintendent to implore him not to appoint Dr. Natali as the new Executive Director of Human Resources stating that in her role as a mandated reporter [she failed to call the New York State Child Abuse Hotline and did not take any actions to curtail the abuse."

82. The Freeman Letter also indicated, among other things:

- No training has ever been conducted in the use of time out rooms as required by Section 200.22(c) of the Regulations of the Commissioner of Education;

- The Board has not adopted a [formal] policy on the use of time out rooms as required by Section 200.22(c) of the Regulations of the Commissioner of Education;

12

- Training has not been provided in reporting instances of child abuse as required by Section 3209(a) of Education Law;

- Board policy #7553 was violated when Middle School Principal Natali did not report the allegations of child abuse to the New York Statewide Central Register of Child Abuse and Maltreatment (SCR);

- New York State Penal Law was violated when Middle School Principal Natali or Middle School Coordinator Russo did not report allegations of child abuse to the New York Statewide Central Register of Child Abuse and Maltreatment (SCR);

- Superintendent Weiss violated the Safe Schools Against Violence in Education (SAVE) law when he permitted Lauren Schneider, a person accused of child abuse, to resign her position without prosecution.

83. Upon information and belief, the acts and omissions described in the Freeman Letter actually took place, *i.e,* the District, Russo, Natali, Berger and Weiss failed to train in the proper use of a time out room, failed to train in the proper reporting of child abuse, negligently retained District personnel and failed to report abuse as required by New York State law.

## IV. Weitzman's 3020(a) Hearing

84. Upon information and belief, based upon an anonymous letter, circulated online and distributed in 2015, concerning abuses at the hands of Weitzman, Schneider and Lilley, and based upon further parent inquiry; news spread through the community and into the media.

85. Approximately five years after the abuse began and based on public outcry and increasing news media, in or around March 4, 2016, the District commenced a public hearing pursuant to Education Law § 3020 ("3020"), and charged Weitzman, *inter-alia,* with the following:

> a. during the Fall of 2012, Respondent endangered the health, safety and/or welfare of a disabled student classified by the CSE, that Respondent stated to another staff member that she was going to tie zip ties around ▇▇▇ arms and/or legs to control ▇▇▇ behavior and asked staff members working in conjunction with Respondent for help in doing so.

13

b. During the 2013-2014 school year, Respondent endangered the health, safety and/or welfare of a disabled student classified by the CSE, ███, in that on one (1) or more occasions, Respondent and/or staff members working in conjunction with Respondent, told directly and in the presence of the other students in the class, "you f'ing ███ you, you need to ███ you are disgusting" or words to that effect

c. During the 2012-2013 and 2013-2014 school year, Respondent endangered the health, safety and/or welfare of ███, a disabled student classified by the CSE in that in that on one (1) or more occasions, Respondent allowed ███ to straddle her from behind while she was seated in a chair.

d. In or about October 2013, Respondent endangered the health, safety and/or welfare of a disabled student classified by the CSE ███ in that Respondent duct taped rubber gloves around ███ wrist to control ███ behavior.

86. The Weitzman 3020(a) hearings began on or about March 4, 2016, and upon information and belief remain ongoing. As such, the full extent of the abuse perpetrated by Weitzman, Lilley and Schneider remains unknown.

87. Upon information and belief, although the District was eventually forced to discuss the abuse with parents of White Children, like LG; parents of Black and/or minority students/children, like DB, have still not been contacted by any employee of the District.

88. Upon information and belief, Defendants viewed Black families as less involved in school life, less likely to be involved in the lives of their children, and deliberately chose not to contact Black families or minority families believing these families would be less likely to discover the abuse.

89. With the intent to discriminate against Black children/families, like Summers and DB, the District has not made any efforts to contact Black or minority families, such as DB's, to inform them of the abuse or even speak with these parents to ask if the parents were aware of any signs of abuse.

14

90. Upon information and belief, parents of students, through their counsel, have submitted FOIL requests for the records related to the abuse and the 3020 hearings, but have been rebuffed by the District on grounds of privacy.

### V. Notice of Claim Requirements

91. Due to the extensive and ongoing cover-up by the District and its officers, on April 1, 2016, Plaintiffs, through their prior counsel, Ginsburg and Misk, filed a Petition seeking leave to file a late Notice of Claim.

92. On July 26, 2016, Honorable Anthony Parga, Justice of the Nassau County Supreme Court, granted the Petition and leave to file and serve a late Notice of Claim.

93. Within 30 days of Justice Parga's order, on August 12, 2016, Plaintiffs caused the Notice of Claim, sworn to by Summers on July 28, 2016 (on behalf of DB and herself), to be served upon the District through their counsel, Lewis Silverman, Esq.

94. On October 21, 2016, Plaintiff Summers was deposed in accordance with New York General Municipal Law 50-h, as DB was non-communicative.

95. At least thirty (30) days have elapsed since the service of the notices of claim, and the 50-h hearing, and payment or adjustment thereof has been refused or neglected, and this action has been commenced within one year after the service of the notice of claim and is therefore timely.

### FIRST CAUSE OF ACTION
### (Negligence, NY State Law as to All Defendants)

96. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

97. Each Defendant owed a duty of care to DB as a mentally disabled student in their custody and care to, *inter-alia,* provide her with an education commensurate with that of a special needs student, to keep her mentally and physically safe, to prevent all reasonably anticipated harms

15

and injury that may and did befall DB while in their custody and care, to refrain from mentally, sexually and physically abusing DB; to rectify, prevent and report the abuses known or those which should have been reasonably known to Defendants, and to refrain from use of drugs or alcohol while in care and custody of DB.

98. Defendants breached their duty of care. Defendants knew or should have known that their negligent, intentional and/or reckless acts, as delineated in this complaint, constituted illegal abuse; endangered the life, welfare, safety and wellbeing of DB and others; that they had duty to report abuse, prevent the abuse, train and supervise their employees, reprimand their employees, but nevertheless Defendants deprived DB and others of their rights to proper education (commensurate with their disabilities) knowing that said acts of abuse were likely to cause mental and physical harm to DB, and said acts did cause mental and physical harm to DB.

99. Despite prior and actual knowledge of the abuse, the District, Weitzman, Lilley, Schneider, Cantore, Russo, Berger, Natali, Weiss, and others met, agreed to and engaged in a concerted effort to conceal the abuse, failed to undertake a timely investigation into the abuse, failed to report the abuse to New York State Reporting Hotline, <u>failed</u> to take reasonable steps to rectify and/or prevent the abuse, failed to punish, reprimand, supervise and train the abusers, and to keep parents reasonably informed.

100. The acts of the Defendants were the direct and proximate cause of the mental and physical harm sustained by DB.

101. As a result of the foregoing, Plaintiffs have been damaged in a sum which exceeds the monetary jurisdiction of all inferior courts and to be further determined at the trial of this matter.

## SECOND CAUSE OF ACTION
### (Negligent Supervision, NY State Law Against the District)

102. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

103. To state a cause of action for negligent supervision, Plaintiffs must plead (a) that the tortfeasor and defendant were in an employer-employee relationship; (b) that the employer knew or should have known of the employee's propensity to commit the act(s) which caused the injury before the injury's occurrence; and (c) that the tort occurred on the employer's premises or with the employer's chattels.

104. During all relevant times, Weitzman, Lilley, Schneider, Cantore, Russo, Berger, Natalie and Weiss were employees of the District.

105. The District (through Weiss and Russo, among other Individual Defendants) had a duty to supervise Weitzman, Lilley, Schneider, Cantore, Russo, Berger, Natalie and Weiss.

106. That as early as 2011 (and perhaps as early as 2009), the District, through its final policy makers (including Cantore, Russo, Berger, Natalie and Weiss) obtained actual credible knowledge or should have known of Weitzman, Lilley, Schneider's propensity to commit the acts described above (through complaints of interns, teachers and teacher's assistants) and such knowledge of the abuse was acquired prior to the injury inflicted upon DB.

107. Despite having received credible actual knowledge of the abuse taking place on the premises of LBMS, as early as 2011 (perhaps as early as 2009), the District and its final policy makers (Cantore, Russo, Berger, Natalie and Weiss), were deliberately indifferent, engaged in a concerted effort to conceal the abuse, failed to supervise and/or properly train their employees so as to prevent the abuse; failed to admonish, correct, punish, suspend, and/or terminate their employees, and did not take any formal action against Weitzman until March 2016 at the earliest.

17

108. The acts of the District and its final policy makers, performed pursuant to their policy, custom or practice, were the direct and proximate cause of the mental and physical harm sustained by DB.

109. As a result of the foregoing, Plaintiffs have been damaged in a sum which exceeds the monetary jurisdiction of all inferior courts and to be further determined at the trial of this matter.

### THIRD CAUSE OF ACTION
### (Negligent Retention, NY State Law Against the District)

110. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

111. That as early as 2011 (and potentially as early as 2009), the District, through its final policy makers (including Cantore, Russo, Berger, Natalie and Weiss) knew or should have known of Weitzman, Lilley, and Schneider's propensity to commit the acts described above (through complaints of interns, teachers and teacher's assistants) prior to the injury inflicted upon DB.

112. Despite having received credible and actual knowledge of the abuse, as early as 2011 (and potentially as early as 2009), the District and its final policy makers (including Cantore, Russo, Berger, Natalie and Weiss), were deliberately indifferent and/or engaged in a concerted effort to conceal the abuse, and failed to supervise and/or properly train their employees so as to prevent the abuse, to admonish, correct, punish, suspend, and/or terminate their employees and did not take any formal action until 2016 at the earliest. During this time, Weitzman, Lilley and Schneider remained in the District's employ and parents were not contacted regarding the abuses.

113. The acts of the District and its final policy makers were the direct and proximate cause of the mental and physical harm sustained by DB.

114. As a result of the foregoing, Plaintiffs have been damaged in a sum which exceeds the monetary jurisdiction of all inferior courts and to be further determined at the trial of this matter.

18

## FOURTH CAUSE OF ACTION
### (Respondeat Superior Against the District, Under State Law)

115. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein, and incorporate each allegation below.

116. As stated above, Cantore, Russo, Berger, Natalie, Weiss, Weitzman, Lilley, Schneider are employees of the District. Based upon their negligent, reckless and/or intentional acts, which were performed within the scope of their employment and condoned by policy makers, the District is liable for the acts of said employees.

117. As a direct and proximate result of the foregoing, Plaintiffs have been damaged in a sum which exceeds the monetary jurisdiction of all inferior courts and to be further determined at the trial of this matter.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983- Substantive Due Process
### (As against the District)

118. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

119. Over the course of several years, beginning in 2012 and until Defendant Weitzman's suspension in the Fall of 2014, Plaintiff D.B. was negligently, intentionally, recklessly and inhumanely subjected a series of physical, sexual and psychological abuses by state actors, Weitzman, Lilley and Schneider.

120. During the time-period when DB was a student at LBMS, District administrators, state actors and final policy makers, including Defendants Cantore, Russo, Berger, Natalie, and Weiss, were repeatedly made aware of witness reports and complaints concerning the physical abuse and injuries to which DB was subjected at the hands of Defendants Weitzman, Lilley and Schneider.

19

121. Despite receiving numerous reports and confirming the accuracy of the reports through internal investigations, District administrators and final policy makers, including Defendants Cantore, Russo, Berger, Natalie, and Weiss were deliberately indifferent, failed to take any corrective action, failed to supervise and train their employees so as to protect DB or to otherwise discipline or dismiss Weitzman, Lilley and Schneider from their positions and allowed them to continue to inflict physical and psychological harm upon DB.

122. Rather, District administrators and final policy makers, including Defendants Cantore, Russo, Berger, Natalie, and Weiss, threatened complaining witnesses with retaliatory conduct and, upon information and belief, did in fact terminate, transfer, and/or permit the silent resignation of any complaining witnesses that refused to comply with the District's policy of concealment with respect to the documented acts abuse directed at DB.

123. The actions of final policy makers, including Defendants Cantore, Russo, Berger, Natalie, and Weiss constitute a policy, practice and/or custom, deliberate concealment, failure to train and/or supervise and complete indifference to the physical safety of DB and other disabled students, thereby, resulted in the persistent and brutal deprivation of DB's constitutional rights.

124. As a direct and proximate result of the District's deliberate policy of concealment and indifference, Plaintiff DB was left defenseless against the attacks of Defendants Weitzman, Lilley and Schneider and was caused to sustain severe physical, psychological, and emotional damages at the hands of the Defendants in a sum which exceeds the monetary jurisdiction of all inferior courts and to be further determined at the trial of this matter, but believed to be no less than $5,000,000.00.

20

## SIXTH CAUSE OF ACTION
42 U.S.C. § 1983- Equal Protection
(As against all Defendants)

125. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

126. At all times herein referenced, Defendants were aware that Plaintiff DB was a Black, non- communicative, severely disabled infant, diagnosed with Down Syndrome.

127. Defendants were aware and had knowledge that DB's mental handicap severely impaired DB's communication such that she required special education.

128. Defendants Weitzman, Lilley and Schneider were at all times aware of Plaintiff DB's conditions and deliberately targeted her for physical and psychological abuse on the basis of these disabilities, as her disability prevented her from reporting abuses to friends, family and or District Staff.

129. This abuse and mistreatment of DB would not have occurred but for the fact of DB's disabilities.

130. Upon information and belief, similarly situated children in the District's other special education classes (other than Weitzman's class) were not subjected to the abuse as delimited above.

131. Defendants Weitzman, Lilley and Schneider were aware that DB (and other in her class) could not communicate the abuse to family members, her parents or staff members at Long Beach Middle School, and thus chose to target and single-out DB for abuse as her disability prevented her from reporting the same.

21

132. Defendants Russo, Cantore, Natali and Weiss, by creating and implementing a deliberate policy of concealment, and deliberate indifference, and failing to train or supervise their employees, and relying on the fact that DB could not communicate or relate the acts of abuse directed against her, intentionally discriminated against Plaintiff DB on the basis of her disability and permitted her to continue to be subjected to physical and psychological abuse at the hands of Weitzman, Lilley and Schneider.

133. Upon information and belief, Defendants District, Russo, Cantore, Berger Natali and Weiss, continue to implement a deliberate policy of concealment, and have not contacted the parents or families of Black and/or minority children to date, but have contacted the families of White children, including RG.

134. Upon information and belief, Defendants District, Russo, Cantore, Berger, Natali and Weiss perceived Black families to be less concerned about their children and uninvolved in school life, and based upon such "stereotypical" and racially charged beliefs (adopted as policy, practice and custom), did not contact the Black or minority families to advise of the abuse and/or potential abuse sustained at the hands of Weitzman, Lilley and Schneider, believing Black families would allow such abuse to go undetected.

135. Defendants Russo, Weiss, Cantore, Berger and Natali knew to a moral certainty that their policy of concealment and deliberate failure to discipline, discharge, or transfer Defendants Weitzman, Lilley and Schneider would subject DB to continued abuse, without parent knowledge.

136. There was no governmental interest or rational basis to justify the discriminatory acts of abuse and policies adopted to cover up such abuse, and therefore allowing such abuse to continue undetected.

22

137. As such, Plaintiff DB was deprived of her rights on the basis of her disabilities and race in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

138. As a direct result and proximate result of the foregoing, Defendants and the policies, practice and customs instituted by the District, DB sustained severe physical, psychological, and emotional damages in a sum which exceeds the monetary jurisdiction of all inferior courts and to be further determined at the trial of this matter but believed to be no less than $5,000,000.00.

**SEVENTH CAUSE OF ACTION**
**42 U.S.C. § 1983 and § 1985(3)- Conspiracy**
**(As against Defendants Weitzman, Lilley, Schneider)**

139. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

140. At all relevant times referenced herein, Defendants Weitzman, Lilley and Schneider planned, met, agreed and actively conspired to abuse and conceal the acts of abuse to which they were subjecting DB and her classmates.

141. Upon information and belief, on several occasions between September 2012 and 2014, when confronted by part-time teaching assistants objecting to their abusive practices, Weitzman, Lilley and Schneider met and discussed the abuse, agreed to continue the abuse and to conceal the abuse.

142. In furtherance of their agreement, Weitzman, Lilley and Schneider threatened to report said objectors to District administrators and to instigate disciplinary proceedings against them.

143. In furtherance of the agreement to abuse and conceal, Weitzman advised Summer after witnessing her daughter being held to the ground, sat upon and injured that the "procedure" was normal and for DB's "safety."

23

144. In furtherance of their agreement to abuse and conceal, Defendants Weitzman, Lilley and Schneider continued for at least two years (perhaps more) to abuse mental disabled children in their class-room, including DB, and each act of abuse, failure to report, and concealment of such abuse was an overt act in furtherance of the conspiracy which is continuing to date.

145. As stated above, Weitzman, Lilley and Schneider were aware that DB could not communicate the abuse to family members, her parents or staff members at LBMS, based on her disability, and thus they chose to target and single-out DB and other mentally handicapped children for abuse as they would not be able to report the same, and thereby deprived DB of equal protection under the law.

146.   As a direct and proximate result of Defendants agreement to abuse and conceal, adopted a policy, practice and custom by the District, DB was in fact subjected to ongoing abuse of her body and mind, her constitutional rights, thereby causing her severe physical and psychological damages in a sum which exceeds the monetary jurisdiction of all inferior courts and to be further determined at the trial of this matter but believed to be no less than $5,000,000.00.

**EIGHTH CAUSE OF ACTION**
**42 U.S.C. § 1983 and§ 1985(3)- Conspiracy**
**(As against Defendants Russo, Cantore, Berger, Natali, and Weiss)**

147.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

148. At all relevant times referenced herein, Defendants Russo, Berger, Natali, Cantore and Weiss actively conspired amongst each other to conceal the acts of abuse inflicted upon DB and thereby allowed such acts to continue.

149. Between September 2012 and Fall 2014, Defendants received numerous credible reports and complaints detailing the abuse of DB and others.

24

150. Defendants Russo, Berger, Natali, Cantore and Weiss knew that if reports of this abuse were to become public, the District would *risk losing federal and state funding* for its special education programs and would, thereby, place their jobs and careers at risk.

151. Defendants Russo, Berger, Natali, Cantore and Weiss were also aware, perhaps as early as 2009 and certainly by 2011, that Weitzman, Lilley and Schneider were routinely abusing the special education children in their care but were deliberately indifferent, deliberately chose to conceal and continue to conceal, failed to train, report and/or correct the problems and permitted the abuse to continue.

152. Defendants Russo, Berger, Natali, Cantore and Weiss with full knowledge of their prior failures to act to prevent the abuse and relying upon DBs inability to communicate and acting upon stereotypes and racial beliefs about the Black community, through a series of meetings beginning in or about Spring 2013, and continuing to the present, agreed to engage in a policy of concealment by continuing to permit the abuse of DB to continue and, transferring and/or permitting the silent resignation of any complaining witnesses employed by LBMS.

153. One veteran teacher at Long Beach Middle School complained to Defendants Russo, Berger, Natali, Cantore and Weiss, in or about Spring of 2013, that she witnessed a female student being subdued to the ground. Upon information and belief, this student was DB.

154. Upon information and belief, in or about Fall 2013, a teaching assistant witnessed Defendant Lilley pushing and forcibly handling special education students during gym class and reported this abuse to Defendants Russo, Berger, Natali, and Cantore. Upon information and belief, this teaching assistant was transferred from LBMS within a week.

155. Post 2014 investigation, and in furtherance of the policy and agreement of concealment and conspiracy (to which Weiss and Defendants Russo, Berger, Natali, and Cantore agreed), the District instituted an additional policy to further conceal the acts of abuse, namely, arranging for the silent resignation of complaining witnesses. Each action of Weiss, Defendants Russo, Berger, Natali, and Cantore was an overt act in furtherance of the conspiracy.

156. Upon information and belief, as of the Fall of 2014, several complaining teachers have been permitted to resign in silence, among which was Defendant Schneider's resignation was brokered and effectuated directly by Defendant Weiss.

157. Defendants Russo, Berger, Natali, Cantore and Weiss deprived DB of her constitutional rights to bodily integrity, to be free from intentional discrimination based on disability and race, and denied DB equal protection of the laws for the purpose of preserving their own careers and ensuring that the District continued to receive financial support for their special education programs.

158. As a result of ongoing conspiracy to conceal the acts of abuse, DB suffered injury at the hands of Defendants Weitzman, Lilley and Schneider and sustained severe physical and psychological damages, and as a result Plaintiff has been damaged in a monetary sum to be further determined at the trial of this matter, but believed to be no less than $5,000,000.00.

## NINTH CAUSE OF ACTION
### Title II of the ADA (As against all Defendants)

159. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

160. Plaintiff DB is a qualified individual with a disability within the meaning of Title II of the Americans with Disabilities Act ("ADA").

26

161. Defendant District is a "public entity" subject to the ADA as it receives federal financial assistance for, among other things, its special education programs and services.

162. Plaintiff DB was intentionally discriminated against by Defendants Weitzman, Lilley and Schneider on the sole basis of her Down Syndrome diagnoses (disability) and her inability to communicate by subjecting her to years of cruel abuse, physical and psychological harm, knowing DB's inability to communicate the abuse to family, nurses or other member of the community.

163. Plaintiff DB was intentionally discriminated against by Defendants District, Russo, Berger Cantore, Natali and Weiss on the basis of her disabilities, as a result of their deliberate indifference and/or policies to conceal the acts of abuse being perpetrated. The abuse and continued cover up by the District would not have happened but for DB's disability as the District, Russo, Berger Cantore, Natali and Weiss knew that DB and other's mental impairment prevented them from reporting the abuse.

164. As a direct result of the District's deliberate policies, actions, and omissions in violation of Title II of the ADA, DB was discriminated against and deprived of the protections of the ADA and sustained severe physical and psychological damages in a sum which exceeds the monetary jurisdiction of all inferior courts, but believed to be no less than $5,000,000.00.

**TENTH CAUSE OF ACTION**
**42 U.S.C. § 1983**
**False Imprisonment (As against all Defendants)**

165. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

166. Weitzman, Lilley and Schneider agreed to, conspired to, intended to and did lock disabled students (whom they perceived to be misbehaving) in the classroom and/or public bathroom, including DB.

27

167. Although DB suffers from Down Syndrome, it is apparent that DB had some awareness of her confinement, as she currently displays a phobia of public bathrooms.

168. As DB is non-communicative, she could not consent to being confined in the classroom and/or public bathroom.

169. Weitzman, Lilley and Schneider were not acting under any privilege or with any reasonable justification when the agreed to, conspired to, and did lock disabled students in the bathroom for period up to a half an hour, including DB, and then conspired to cover up their actions.

170. Through Russo, Berger, Cantore, Natali and Weiss' deliberate indifference, failure to train and/or supervise on the proper use of a time out room, and/or through their active concealment the District adopted and maintained a policy, practice and custom of locking disabled children in the classroom/public bathroom and thereby further caused such practice to continue to the injury of DB.

171. As a direct result of the all Defendants actions and the District's deliberate policies, actions, and omissions, DB sustained severe physical and psychological damages in sum exceeding the monetary jurisdiction of all lower courts but to be further determined at the trial of this matter but believed to be no less than $5,000,000.00.

## ELEVENTH CAUSE OF ACTION
### 42 U.S.C. § 1986- Action for Neglect to Prevent
### (As against all Individual Defendants)

172. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

173. At all times herein referenced, the individually named Defendants did conspire to deprive Plaintiff DB of her constitutional rights on the basis of her disabilities, race and based on her status in a protected class.

28

174.    At all times herein referenced, the individual Defendants had actual knowledge of the acts of abuse being perpetrated at the hands of Weitzman, Lilley and Schneider.

175.    At all times herein referenced, the individual Defendants were in a direct position to protect DB but deliberately chose to conceal reports of abuse brought to their attention and high ranking policy makers threatened to terminate, transfer, and/or permitted the silent resignation of complaining witnesses.

176. Individual Defendants failed to prevent the conspiracy and actions of Defendants Weitzman, Lilley and Schneider, and the conspiracy of Russo, Berger, Cantore, Natali and Weiss, as well as their own conspiracy to conceal the acts of abuse to which Plaintiff DB was being subjected.

177. As a direct and proximate result of Defendants' failure to cease their conspiracy and/or to intervene to prevent it, DB sustained severe physical and psychological damages, in a sum to be determined at the trial of this matter, but believed to be no less than $5,000,000.00.

**TWELFTH CAUSE OF ACTION**
**Equal Protection**
**Article 11 of the New York State Constitution**
**(As against all Defendants)**

178.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

179.    Article I ("Bill of Rights") of the New York State Constitution, §11 states "[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state."

29

180. At all times herein referenced, Defendants were aware that Plaintiff DB was a Black, non- communicative, severely disabled infant, diagnosed with Down Syndrome.

181. Defendants were aware and had knowledge that DB's mental handicap severely impaired Plaintiff DB and that she required special education.

182. Defendants Weitzman, Lilley and Schneider were at all times aware of Plaintiff DB's conditions and deliberately targeted her for physical and psychological abuse on the basis of these disabilities and her inability to communicate her abuse.  This treatment would not have occurred but for the fact of Plaintiff DB's disabilities.

183. Defendants Weitzman, Lilley and Schneider were aware that DB could not communicate the abuse to family members, her parents or staff members at LBMS, and thus they chose to target and single-out DB for abuse as she would not be able to report the same.

184. Defendants Russo, Cantore, Berger, Natali and Weiss, by creating and implementing a deliberate policy of concealment, and deliberate indifference, and failing to train or supervise or discipline their employees, and relying on the fact that DB could not communicate or relate the acts of abuse directed against her, intentionally discriminated against Plaintiff DB on the basis of her disability and permitted her to continue to be subjected to physical and psychological abuse at the hands of Weitzman, Lilley and Schneider.

185. Additionally, upon information and belief, Defendants District, Russo, Cantore, Berger, Natali and Weiss, continue to implement a deliberate policy of concealment, and have not contacted the parents or families of Black and/or other minority students to date, but have contacted the families of White children, including RG.

30

186. Defendants District, Russo, Cantore, Berger, Natali and Weiss perceived Black families to be less concerned about their children and uninvolved in school life, and based upon such "stereotypical" and racially charged beliefs (adopted as policy, practice and custom), purposely avoided contacting the Black families to advise of the abuse and/or potential abuse sustained at the hands of Weitzman, Lilley and Schneider, believing such abuses would go undetected.

187. Defendants Russo, Weiss, Cantore and Natali knew to a moral certainty that their policy of concealment and deliberate failure to discipline, discharge, or transfer Defendants Weitzman, Lilley and Schneider would subject DB to continued abuse, without parent knowledge.

188. There was no governmental interest or rational basis to justify the discriminatory acts of abuse and policies adopted to cover up such abuse, and therefore allowing such abuse to continue undetected.

189. As such, Plaintiff DB was deprived of her rights on the basis of her disabilities, color and race in violation of the Equal Protection Clause of § 11 of the Constitution of the State of New York.

190.    As a direct result and proximate result of the foregoing, Defendants and the policies, practice and customs instituted by the District, DB sustained and will sustain severe physical, psychological damages, and as a result Plaintiff has been damaged in a monetary sum to be determined at the trial of this matter, but believed to be no less than $5,000,000.00.

### THIRTEENTH CAUSE OF ACTION
### Failure to Report Child Abuse
### New York State Social Services Law §413
### (As against all Individual Defendants)

191. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

31

192. New York Social Services Law § 413 provides that various categories of adults in positions of trust and/or authority, including teachers, must report child abuse if they have "reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child or when they have reasonable cause to suspect that a child is an abused or maltreated child where the parent, guardian, custodian or other person legally responsible for such child comes before them in their professional or official capacity and states from personal knowledge facts, conditions or circumstances which, if correct, would render the child an abused or maltreated child." N.Y.S.S.L. § 413(1)(a). A private right of action for money damages may lie against a teacher who fails to report in accordance with § 413. N.Y.S.S.L. § 420(2).

193. Defendant Weitzman, a teacher of the District and of DB, was in a position of trust and/or authority and is charged with reporting an abused or maltreated child pursuant to New York Social Services Law § 413.

194. Defendant Lilley, a teacher's assistant of the District and DB was in a position of trust and/or authority and is charged with reporting an abused or maltreated child pursuant to New York Social Services Law § 413.

195. Defendant Schneider, a teacher assistant of the District and DB was in a position of trust and/or authority and is charged with reporting an abused or maltreated child pursuant to New York Social Services Law § 413.

196. Defendant Russo was the Coordinator of Special Education of the District, was in a position of trust and/or authority and is charged with reporting an abused or maltreated child pursuant to New York Social Services Law § 413.

32

197. Defendant Cantore was the Executive Director of Pupil Personnel Services was in a position of trust and/or authority and is charged with reporting an abused or maltreated child pursuant to New York Social Services Law § 413

198. Defendant Berger was the Director of Human Resources, an employee of the District, was in a position of trust and/or authority and is charged with reporting an abused or maltreated child pursuant to New York Social Services Law § 413

199. Defendant Natali was the Principal of LBMS, an employee of the District, was in a position of trust and/or authority and is charged with reporting an abused or maltreated child pursuant to New York Social Services Law § 413

200. At all relevant times hereinafter mentioned, Defendant Weiss was the Superintendent of Schools, an employee of the District, supervised, directed and oversaw the "investigation" of abuse perpetrated by Weitzman, Lilley and Schneider, and was a final policy maker for the District.

201. In their official capacities, Russo, Cantore, Berger, Natali, Weiss, Weitzman, Lilley and Schneider obtained personal and credible knowledge of facts, conditions, and/or circumstances which if correct, would render DB an abused or maltreated child. The personal and credible knowledge was obtained by Russo, Cantore, Berger, Natali, Weiss, Weitzman, Lilley and Schneider at least as early as 2011.

202. Despite having personal and credible knowledge of the acts of abuse perpetrated on DB and other mentally handicapped students, Russo, Cantore, Berger, Natali, Weiss, Weitzman, Lilley and Schneider did not report to proper authorities, including the police.

203. As a direct and proximate result of the failure to report, DB was subject to further abuse and sustained severe emotional and physical injuries in a sum which exceeds the monetary jurisdiction of all inferior court but to be further determined at the trial of this matter, but believed

33

to be no less than $5,000,000.00.

## FOURTEENTH CAUSE OF ACTION
### (False Imprisonment Under NY State Law- All Defendants)

204. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

205. The elements of false imprisonment claim are the same under New York State Law and 42 U.S.C. § 1983.

206. Based on the conduct described above, Defendants falsely imprisoned DB under New York State law.

207. As a direct result of the District's deliberate policies, actions, and omissions, DB sustained severe physical and psychological damages in sum which exceeds the monetary jurisdiction of all inferior court but to be further determined at the trial of this matter, but believed to be no less than $5,000,000.00

## FIFTEENTH CAUSE OF ACTION
### (On Behalf of Summers Individually)
### (Loss of Companionship/Consortium Under NY State Law- All Defendants)

208. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

209. At the time of the injuries sustained and continuing to be sustained by DB, Summers was the mother and natural guardian of DB.

210. That as a result of the wrongful and negligent acts of the Defendants, and each of them, the Plaintiff Summers was caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection of her child, all to the detriment of their relationship.

34

211. That all the aforesaid injuries and damages were caused solely and proximately by the negligence, recklessness or intentional acts of the Defendants, and each of them.

212. Wherefore, Summers has been injured and damaged in a monetary sum which exceeds the jurisdiction of all lower courts and to be further determined at the trial of this matter.

## SIXTEENTH CAUSE OF ACTION
### 42 U.S.C. 1988 – Attorney's Fees
### (As against all Defendants)

213. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

214. Section 1988 of Title 42 of the United States Code states, in part:

> (b)  Attorney's fees in any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, [or other titles, citations omitted]. . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction. 42 U.S.C. § 1988(b).

215. Plaintiff has been forced to expend, and will continue to be forced to expend, substantial sums of money for attorney's fees, costs and expenses in prosecuting this action against Defendants.

216. As a result of the foregoing, Plaintiff has been harmed and suffered damages, and continues to be harmed and suffer damages, in a sum which exceeds the monetary jurisdiction of all inferior court but to be further determined at the trial of this matter.

## SEVENTEENTH CAUSE OF ACTION
### 42 U.S.C. 1983- Punitive Damages
### (As against all Defendants)

217. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

35

218. Punitive damages are available under section 1983 to advance the statute's purpose of securing the protection of constitutional rights. An award of punitive damages punishes a defendant who has acted intentionally or recklessly to deny a plaintiff protected rights, and helps secure rights for others by deterring future violations.

219. As discussed above, the Defendants acts of abuse and concealment were intentional and/or reckless.

220. As a direct and proximate result of Defendants intentional and/or reckless acts, DB has been physically and mental injured.

321. Plaintiff requests this Court award punitive damages for the intentionally and/or reckless deprivations of Plaintiffs protected rights, and to help secure rights for others by deterring future violations.

**WHEREFORE**, Plaintiff requests the Court to render judgment as follows:

(i) On the first cause of action, awarding Plaintiffs a monetary sum which exceeds the monetary jurisdiction of all inferior courts and to be further determined at the trial of this matter;

(ii) On the second cause of action, awarding Plaintiffs a monetary sum which exceeds the monetary jurisdiction of all inferior courts and to be further determined at the trial of this matter;

(iii) On the third cause of action, awarding Plaintiffs a monetary sum which exceeds the monetary jurisdiction of all inferior courts and to be further determined at the trial of this matter;

(iv) On the fourth cause of action, awarding Plaintiffs a monetary sum which exceeds the monetary jurisdiction of all inferior courts and to be further determined at the trial of this matter;

(v) On the fifth cause of action, under authority of 42 U.S.C. § 1983, awarding Plaintiffs a monetary sum Plaintiff a monetary sum believed to be no less than five million dollars, but to be further determined at the trial of this matter.

36

(vi) On the sixth fifth cause of action, under authority of 42 U.S.C. § 1983, awarding Plaintiffs a monetary sum believed to be no less than five million dollars, but to be further determined at the trial of this matter.

(vii) On the seventh cause of action, under authority of 42 U.S.C. §§ 1983 and 1985(3), awarding Plaintiffs a monetary sum believed to be no less than five million dollars, but to be further determined at the trial of this matter.

(viii) On the eighth cause of action, under authority of 42 U.S.C. §§ 1983 and 1985(3), awarding Plaintiffs a monetary sum believed to be no less than five million dollars, but to be further determined at the trial of this matter.

(ix) On the ninth cause of action, under authority of Title II of the ADA awarding Plaintiffs a monetary sum believed to be no less than five million dollars, but to be further determined at the trial of this matter.

(x) On the tenth cause of action, under authority of 42 U.S.C. § 1983, awarding Plaintiffs a monetary sum believed to be no less than five million dollars, but to be further determined at the trial of this matter.

(xi) On the eleventh cause of action, under authority of 42 U.S.C. § 1983 and 42 U.S.C. § 1986, awarding Plaintiffs a monetary sum believed to be no less than five million dollars, but to be further determined at the trial of this matter.

(xii) On the twelfth cause of action, under authority of Article 11 of the New York State Constitution, awarding Plaintiffs a monetary sum 123believed to be no less than five million dollars, but to be further determined at the trial of this matter.

(xiii) On the thirteenth cause of action, under authority of New York State Social Services Law § 413, awarding Plaintiffs a monetary sum believed to be no less than five million dollars, but to be further determined at the trial of this matter.

(xiv) On the fourteenth cause of action, awarding Plaintiffs a monetary sum believed to be no less than five million dollars, but to be further determined at the trial of this matter.

(xv) On the fifteenth cause of action, a monetary sum which exceeds the jurisdiction of all inferior courts but to be further determined at the trial of this matter.

(xvi) On the sixteenth cause of action, under the authority of 42 U.S.C. § 1988, awarding Plaintiffs reasonable attorney fees incurred in the prosecution of this action in a sum to be determined at the trial of this matter;

(xvi) On the seventeenth cause of action, awarding punitive damages in an amount to be determined at the trial of this matter

(xvii) Upon all claims, granting Plaintiffs' costs, disbursements and interest, from the

earliest date under the law; and

(xviii) Granting Plaintiffs such other and further relief as the court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial of all issues so triable.

Dated: Carle Place, New York
February 23, 2017

                  _____/s/_____
                  Jeffrey K. Brown, Esq.
                  Jonathan C. Messina, Esq.
                  *Attorney(s) for Plaintiffs*
                  LEEDS BROWN LAW, P.C.
                  One Old Country Road, Suite 347
                  Carle Place, New York 11514
                  (516) 873-9550

                  Co-Counsel for Plaintiff
                  JASON P. SULTZER, ESQ.
                  The Sultzer Law Group
                  85 Civic Center Plaza, Suite 104
                  Poughkeepsie, NY 12601
                  845-483-7100

To:    LONG BEACH CITY SCHOOL DISTRICT
       a/k/a LONG BEACH PUBLIC SCHOOLS
       235 Lido Boulevard
       Long Beach, New York

       LISA WEITZMAN
       c/o Long Beach City School District
       235 Lido Boulevard
       Long Beach, New York

       JEAN MARIE LILLEY
       c/o Long Beach City School District
       235 Lido Boulevard
       Long Beach, New York

38

LAUREN SCHNEIDER
c/o Long Beach City School District
235 Lido Boulevard
Long Beach, New York

SABRINA CANTORE,
c/o Long Beach City School District
235 Lido Boulevard
Long Beach, New York

VINCENT RUSSO
c/o Long Beach City School District
235 Lido Boulevard
Long Beach, New York

DR. RANDI BERGER
c/o Long Beach City School District
235 Lido Boulevard
Long Beach, New York

DR. MICHELE NATALI,
c/o Long Beach City School District
235 Lido Boulevard
Long Beach, New York

DAVID WEISS
c/o Long Beach City School District
235 Lido Boulevard
Long Beach, New York

39